UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| J.P., by his foster mother and next friend, ALISHA OGDEN,<br><br>      Plaintiff,<br><br>v.<br><br>BELTON 124 SCHOOL DISTRICT,<br>MISSOURI STATE BOARD OF EDUCATION,<br>DEPARTMENT OF ELEMENTARY AND SECONDARY EDUCATION, and<br>OFFICE OF SPECIAL EDUCATION,<br><br>      Defendants. | Case No. 4:20-cv-00189-NKL |

**ORDER**

Pending before the Court is the Motion to Dismiss by Defendants Missouri State Board of Education, Department of Elementary and Secondary Education, and Office of Special Education. Doc. 15. For the reasons stated below, the motion is denied.

**I. Background[1]**

Plaintiff J.P. is a nine-year-old boy who has a severe intellectual disability. Doc. 1 (Complaint), ¶ 20. On February 20, 2018, J.P. enrolled in Belton School District and subsequently began attending Kentucky Trail Elementary School. *Id.* ¶¶ 21, 28. Pursuant to his individualized education program ("IEP"),[2] J.P. receives special education supports and services at Kentucky

---

[1] In deciding the Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and construes them in the light most favorable to the plaintiff. *See Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

[2] An IEP is the "'primary vehicle' for providing each child with the promised [free appropriate public education]" as required by the Individuals with Disabilities Education Act. *Fry v. Napoleon*

1

Trail and since his enrollment has made progress is this environment. *Id*. ¶¶ 21–27. However, on May 3, 2018, Belton School District changed J.P.'s placement to one of the Missouri State Schools for the Severely Disabled ("MSSSD"). *Id*. ¶¶ 38, 41. J.P.'s mother strongly opposed transfer to the facility, but in August 2019, Belton School District finalized J.P.'s placement at the MSSSD at Trails West, a school of about forty students with severe disabilities. *Id*. ¶ 38, 43. J.P.'s mother challenged J.P.'s IEP and placement in an Individuals with Disabilities Education Act ("IDEA") administrative complaint, but after a hearing, the Administrative Hearing Commission ("AHC") found in favor of Belton School District and determined that J.P.'s IEP and placement at the MSSSD school were appropriate. *Id*. ¶¶ 48–49.

J.P, by his foster mother and next friend Alisha Ogden, subsequently filed this cause of action pursuant to the IDEA, 20 U.S.C. § 1400 et seq., and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq. In Count I against Defendant Belton School District, Plaintiff seeks judicial review and reversal of the special education hearing decision under the IDEA, and in Count II, Plaintiff seeks declaratory and injunctive relief as well as damages for discriminatory exclusion from Defendants Missouri State Board of Education, Department of Elementary and Secondary Education, and Office of Special Education under the ADA. *Id*. at pp. 15–17.

---

*Cmty. Sch.*, 137 S. Ct. 743, 749, 197 L. Ed. 2d 46 (2017) (quoting *Honig v. Doe*, 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)). "Crafted by a child's IEP Team—a group of school officials, teachers, and parents—the IEP spells out a personalized plan to meet all of the child's educational needs. Most notably, the IEP documents the child's current levels of academic achievement, specifies measurable annual goals for how she can make progress in the general education curriculum, and lists the special education and related services to be provided so that she can advance appropriately toward those goals." *Id*. (internal citations, quotations, and alterations omitted).

## II. Standard

Federal Rule of Civil Procedure 12(b)(6) requires the dismissal of a Complaint that fails to plead facts sufficient to state a plausible claim upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether a Complaint alleges sufficient facts to state a plausible claim to relief, the Court accepts all factual allegations as true. *See Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007). If the facts alleged in the Complaint are sufficient for the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct, the claim has facial plausibility and will not be dismissed. *Iqbal*, 556 U.S. at 678.

## III. Discussion

Defendants Missouri State Board of Education, Department of Elementary and Secondary Education, and Office of Special Education (collectively the "State Defendants") move to dismiss Count II against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants argue that Plaintiff lacks standing to bring his ADA claim, that Plaintiff's Complaint fails to state a claim under the ADA, and that Plaintiff must exhaust his IDEA remedies.

### a. Whether Plaintiff has standing to pursue his ADA claim

Article III standing requires a showing that the plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). An injury in fact is an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).

3

The State Defendants argue that Plaintiff lacks standing to pursue his ADA claim, because he has not yet enrolled in the MSSSD school Trails West, and therefore his claim that his placement constitutes an ADA violation is too speculative. As an initial matter, although he has not yet begun to attend MSSSD, that is only because of the pendency of this litigation;[3] absent this suit, the AHC's decision would require J.P. to be placed at the MSSSD school, where he claims he would suffer the injury of unnecessary segregation. This alleged injury is not purely speculative or conjectural. Rather, it is sufficiently imminent to confer standing here, and J.P.'s claim is ripe. *See, e.g.*, *Davis v. Shah*, 821 F.3d 231, 263 (2d Cir. 2016) ("[A] plaintiff may state a valid claim for disability discrimination by demonstrating that the defendant's actions pose a serious risk of institutionalization for disabled persons."); *Pashby v. Delia*, 709 F.3d 307, 322 (4th Cir. 2013) ("[T]he ADA and the *Olmstead* decision extend to persons at serious risk of institutionalization or segregation and are not limited to individuals currently in institutional or other segregated settings."); *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1181 (10th Cir. 2003) (explaining Title II of the ADA "would be meaningless if plaintiffs were required to segregate themselves by entering an institution before they could challenge an allegedly discriminatory law or policy that threatens to force them into segregated isolation"); *Georgia Advocacy Office v. Georgia*, No. 1:17-CV-03999, 2020 WL 1650434, at *8 (N.D. Ga. Mar. 19, 2020) ("As numerous courts have found, potential plaintiffs need not wait until the segregation occurs or is about to occur.")

Further, the State Defendants misconstrue Plaintiff's claim by asserting that because J.P. has not yet enrolled in Trails West, the State Defendants are "not in a position to determine what,

---

[3] Federal regulations provide that during the pendency of any administrative or judicial proceeding regarding a due process complaint, the child involved "must remain in his or her current educational placement." 34 C.F.R. § 300.518(a). Therefore, J.P. remains in his current educational placement and has not yet transferred to the MSSSD school.

4

if any, accommodations the staff at Trails West may need to provide J.P. based upon his disability." Doc. 16, p. 5. Plaintiff does not claim that Trails West is denying him a particular accommodation at Trails West; rather, Plaintiff alleges that his placement at a segregated school is itself discrimination under the ADA. The ADA provides that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," 42 U.S.C. § 12132, and Congress has "explicitly identified unjustified 'segregation' of persons with disabilities as a 'form of discrimination.'" *Olmstead v. L.C. ex. Rel. Zimring*, 527 U.S. 581, 600, 119 S.Ct. 2176, 2187 (1999) (quoting 42 U.S.C. § 12101(a)(2)) (internal alterations omitted). Thus, Plaintiff's alleged injury is sufficiently concrete and imminent so as to confer standing.

### b. Whether Plaintiff's Complaint fails to state a claim for which relief can be granted

State Defendants next argue that Plaintiff's Complaint fails to articulate facts necessary to state a claim under the ADA or *Olmstead*, claiming that Plaintiff's Complaint merely takes a formulaic approach that recites concepts directly from *Olmstead* and fails to provide any supporting facts.

Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff is generally not required "to plead 'specific facts' explaining precisely how the defendant's conduct was unlawful. Rather, it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled give the defendant fair notice of what the claim is and the grounds upon which it rests, and allow the court to draw the reasonable inference that the plaintiff is entitled to relief."

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam); *Iqbal*, 556 U.S. at 678).

"To establish a violation of Title II of the ADA, a plaintiff must demonstrate that: (1) she is a qualified individual with a disability; (2) she was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity; and (3) that such exclusion, denial of benefits, or other discrimination, was by reason of her disability." *Steelman v. City of Salem*, No. 4:12-CV-00191, 2013 WL 1363792, at *5 (E.D. Mo. Apr. 4, 2013) (citing *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998)). One of Title II's implementing regulations, the "integration mandate," provides that "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). The Supreme Court in *Olmstead* applied the integration mandate in the context of institutionalization and reviewed that Congress had "explicitly identified unjustified 'segregation' of persons with disabilities as a 'form of discrimination.'" *Olmstead*, 527 U.S. at 600, 119 S. Ct. at 2187 (quoting 42 U.S.C. § 12101(a)(2)) (internal alterations omitted). The Supreme Court held that "public entities must provide community-based services to persons with disabilities when (1) the services are appropriate; (2) the affected persons do not oppose the services; and (3) the public entity can reasonably accommodate the community-based services." *Georgia Advocacy Office v. Georgia*, No. 1:17-CV-03999, 2020 WL 1650434, at *7 (N.D. Ga. Mar. 19, 2020) (citing *Olmstead*, 527 U.S. at 597–98, 607 119 S. Ct. at 2176).

When viewing Plaintiff's Complaint as a whole, he sufficiently pleads facts that give Defendants fair notice of what his ADA claim is and the grounds upon which it rests. Plaintiff alleges that he is "a 9-year-old boy with a severe intellectual disability," Doc. 1, ¶ 20, that he has

been required to attend the MSSSD school Trails West that serves only students with severe disabilities, *id*. at ¶ 57, that the State Defendants "unnecessarily segregate[] students in the MSSSD from their peers without disabilities and den[y] them many of the opportunities available in more integrated placement," *id*. at ¶ 59, that J.P. could participate in educational services in integrated settings if State Defendants reasonably modified the delivery of their services and supports, *id*. at ¶ 58, 59, that such services and supports are available in integrated settings in Missouri to other students with similarly severe disabilities, *id*. at ¶ 60, and that J.P. "prefers receiving educational services and supports in an integrated setting," *id*. at ¶ 61. Taken as true, these factual allegations, in conjunction with the remaining factual allegations in the Complaint and description of the relevant law, sufficiently state a claim under the ADA, give the State Defendants fair notice of the grounds upon which the claim rests, and allow the Court to draw the reasonable inference that J.P. is entitled to relief.

State Defendants further argue that "the relief Plaintiff appears to be seeking, a wholesale transition away from students being placed in any of the MSS[S]D schools, goes well beyond the holding in *Olmstead*, which acknowledges that the ADA cannot be reasonably read to require states to phase out certain placements, particularly for those who need greater care and attention." Doc. 16, p. 7. Plaintiff responds that this is an inappropriate consideration at the motion to dismiss stage because "[a]t factual dispute is whether the wholesale segregation of students with severe intellectual disabilities in Missouri is justified." Doc. 19, p. 14.

There is not a class certified here nor has there been a request for class certification in this action. Rather, there is a single Plaintiff. Therefore, the injury that the Court considers is the injury to J.P., and if J.P. prevails, the ultimate remedy will be limited to that which is needed to cure his injury under the ADA. *See Lewis v. Casey*, 518 U.S. 343, 357, 116 S. Ct. 2174, 2183, 135

L. Ed. 2d 606 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."); *Gerlich v. Leath*, 861 F.3d 697, 710 (8th Cir. 2017) (quoting *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 790 (8th Cir. 2004)) ("An injunction must not be 'broader than necessary to remedy the underlying wrong.'"); *Zimmerman v. Bd. of Trustees of Ball State Univ.*, 940 F. Supp. 2d 875, 897 n.19 (S.D. Ind. 2013) ("The scope of injunctive relief the Students seek with regard to prohibiting Ball State from regulating the off-campus conduct of all Ball State students . . . far exceeds any remedy they, as individuals, would be entitled to. This is not a class action, and the Students have presented no authority suggesting that they are somehow entitled to seek relief on behalf of all Ball State students."); *cf: Brown v. Trustees of Boston Univ.*, 891 F.2d 337, 361 (1st Cir. 1989) ("[A]n injunction is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in a lawsuit—even if it is not a class action—if such breadth is necessary to give prevailing parties the relief to which they are entitled.") Plaintiff will eventually bear the burden of showing that the remedy he seeks is not "broader than necessary to remedy the underlying wrong," which as discussed is limited to his injuries as the sole plaintiff in this action. *Gerlich*, 861 F.3d at 710. However, at this stage of the litigation and on a 12(b)(6) motion to dismiss, the Court does not consider whether Plaintiff's requested remedy is meritorious but rather whether he has stated a claim for relief. *Cf: Lewis*, 518 U.S. at 357, 116 S. Ct. at 2183 ("The general allegations of the complaint in the present case may well have sufficed to claim injury by named plaintiffs, and hence standing to demand remediation, with respect to various alleged inadequacies in the prison system, including failure to provide adequate legal assistance to non-English-speaking inmates and lockdown prisoners. That point is irrelevant now, however, for we are beyond the pleading stage.") The Court finds that J.P. has met this burden here.

### c. Exhaustion of IDEA Administrative Procedures

For the first time in their Reply brief, State Defendants assert that "[b]ecause the core of Plaintiffs' claim fall squarely within the IDEA, Plaintiffs' ADA claim is not ripe until Plaintiffs have exhausted the IDEA process as set forth in 20 U.S.C. § 1415(l)." *See* Doc. 23, p. 3.

The IDEA provides that a student must exhaust the IDEA administrative procedures prior to bringing an action in federal court seeking to remedy the denial of a free and appropriate public education ("FAPE"). This requirement "also applies to claims under the Constitution, the ADA, the Rehabilitation Act, and other federal laws protecting children with disabilities" to the extent those claims seek relief "that is also available under the IDEA"—i.e., relief for the denial of a FAPE.[4] *Francis Howell Sch. Dist.*, 850 F.3d at 947 (citing *Fry v. Napoleon Cmty. Sch.*, 137 S.Ct. 743, 752 (2017)); 20 U.S.C. § 1415(l). But if "the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required." *Fry*, 137 S.Ct. at 754.

To determine whether a suit seeks relief for denial of a FAPE the court looks "to the substance, or gravamen, of the plaintiff's complaint." *Id*. at 752. On the one hand, the goal of the IDEA is "to provide each child with meaningful access to education by offering individualized instruction and related services appropriate to her 'unique needs.'" *Id*. at 755. By contrast, Title II of the ADA aims "to root out disability-based discrimination." *Id*. at 756. The Supreme Court identified two questions to consider in making this determination: (1) "[C]ould the plaintiff have

---

[4] 20 U.S.C. § 1415(l) provides as follows:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library?" and (2) "[C]ould an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Id*. If the answer to both questions is yes, then the IDEA's exhaustion requirements likely do not apply. *Id*. A court may also consider the "history of the proceedings" and whether the plaintiff has "previously invoked the IDEA's formal procedures to handle the dispute." *Id*. at 757.

Plaintiff's Complaint alleges not only that, under the IDEA, Defendant District denied J.P. of a FAPE, in part because his placement at MSSSD was not his least restrictive environment, Doc. 1, ¶¶ 28–50, 74, but also that MSSSD schools "unnecessarily segregate[] students in the MSSSD from their peers without disabilities and den[y] them many of the opportunities available in more integrated placements," resulting in a segregated school system, *id*. at ¶¶ 59, 76–82. Applying *Fry*, different courts have come to different conclusions regarding the exhaustion requirement where the plaintiff alleges that educational placements result in unjustified segregation. *Compare Parent/Prof'l Advocacy League v. City of Springfield*, 934 F.3d 13, 26 (1st Cir. 2019) (Plaintiff's ADA claim alleging defendants "unnecessarily segregated students with mental health disabilities in a separate and unequal educational program" was subject to IDEA exhaustion requirement) *with Georgia Advocacy Office v. Georgia*, No. 1:17-CV-03999, 2020 WL 1650434, at *10 (N.D. Ga. Mar. 19, 2020) (Plaintiffs who alleged ADA and Rehabilitation Act claims on the basis of their separation from non-disabled students were not required to exhaust their remedies under the IDEA). In *J.M. v. Francis Howell School District*, the Eighth Circuit applied *Fry* to a student's claim alleging that "use of isolation and physical restraints failed to provide proper sufficient supportive services to permit J.M. to benefit from instruction, and ultimately denied J.M. the benefits of public education." *Francis Howell Sch. Dist.*, 850 F.3d at

10

949 (8th Cir. 2017) (internal citations, quotations, and alterations omitted). The plaintiff had also initially included claims under the IDEA. *Id*. The Eighth Circuit determined that the gravamen of the plaintiff's claim was denial of a FAPE, because her allegations centered around the defendants' use of isolation and restraint as a disciplinary tool in violation of the student's IEP. *Id*. at 949–50. Thus, the IDEA exhaustion requirement applied to the plaintiff's claims.

However, even if Plaintiff's claims here are subject to the IDEA exhaustion requirement, Plaintiff alleges that he *has* exhausted his IDEA administrative remedies. The Complaint states that Plaintiff's mother "filed an IDEA administrative complaint to challenge the IEP and its placement of J.P. outside of his [least restrictive environment]," which was considered in an administrative hearing and which subsequently formed the basis for Plaintiff's appeal to this Court under his IDEA claim. Doc. 1, ¶ 48; *see also id*. at ¶¶ 73, 77 (stating under Count I and Count II that "Plaintiffs have exhausted their IDEA administrative remedies.") Although State Defendants contend that "because the core of Plaintiffs' claim falls squarely within the IDEA, Plaintiffs' ADA claim is not ripe until Plaintiffs have exhausted the IDEA process," Doc. 23, p. 3, they do not address that Plaintiff did file an IDEA due process complaint, request a due process hearing, and engage in exhaustion procedures under the IDEA before bringing suit. Therefore, to the extent that Plaintiff's ADA claim does seek relief of a FAPE that overlaps with his IDEA claim, Defendants have not explained how Plaintiff's administrative hearing did not exhaust the administrative remedies with respect to the substance of that claim. Therefore, at this juncture and on the record before the Court, the Court cannot say that Plaintiff has failed to exhaust his administrative remedies with respect to his ADA claim against the State Defendants.

## IV. Conclusion

For the reasons stated, the State Defendants' motion to dismiss Count II of Plaintiff's Complaint against them is denied.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: July 6, 2020  
Jefferson City, Missouri